UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:07CV-00136-EHJ

BEVERLY A. CECIL                                      PLAINTIFF

VS.

MICHAEL J. ASTRUE,
Commissioner of Social Security                        DEFENDANT

**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION**

BACKGROUND

Before the Court is the complaint (DN 1) of Beverly A. Cecil ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). Both the plaintiff (DN 11) and the defendant (DN 12) have filed a Fact and Law Summary.

The District Judge has referred the case to the undersigned United States Magistrate Judge (DN 9) to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law and Recommendations. 28 U.S.C. Section 636(b)(1)(B). By Order entered April 9, 2008 (DN 9), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff filed an application for Disability Insurance Benefits on January 18, 2005 (Tr. 42-45). Plaintiff alleged that she became disabled on September 14, 2003 as a result of

fibromyalgia, chronic fatigue, back, nerve damage, carpal tunnel syndrome, and weakness in arm (Tr. 42, 53). Administrative Law Judge William G. Reamon ("ALJ") conducted a hearing on January 11, 2007in Owensboro, Kentucky. The plaintiff was present and represented by attorney Michele Cecil. Also present and testifying was William Harpool as a vocational expert.

In a decision dated March 2, 2007, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-28). At the first step, he found that plaintiff had not engaged in substantial gainful activity since September 14, 2003, the alleged onset date (Tr. 17). At the second step, the ALJ determined that plaintiff's cervical disc disease, causing neck pain; right upper extremity cubital tunnel syndrome; asthma; fibromyalgia; and depression due to a personality disorder are severe impairments within the meaning of the regulations (Tr. 17). At the third step, he concluded plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 17).

In conjunction with the fourth step, the ALJ discounted similar functional opinions from an examining neurosurgeon, Dr. Changaris, and a treating general practitioner, Dr. Wahl (Tr. 20-25). The ALJ then relied on the functional opinions of a non-examining State agency medical consultant, Dr. Guerrero, to find plaintiff has the residual functional capacity to perform a range of light work activity[1] (Tr. 17-26). Relying on testimony from the vocational expert, the ALJ

---

[1]Specifically, the ALJ found that plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently as well as push/pull within those weights; plaintiff is limited for reaching in all directions with the bilateral upper extremities (including overhead), but has no other significant upper extremity limitations; she can sit, stand and/or walk, about six hours each, as needed in an eight-hour workday, with normal rest and meal breaks about every two hours; she can no more than occasionally stoop, kneel, crouch, crawl and climb ladders, ropes or scaffolds; she can frequently climb ramps and stairs and frequently balance; she has no significant visual,

2

determined that plaintiff is unable to perform any of her past relevant work (Tr. 26).

At the fifth step, the ALJ relied on testimony from the vocational expert to find plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 27-28). Therefore, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from September 24, 2003 through the date of the decision (Tr. 28).

Plaintiff timely requested review by the Appeals Council (Tr. 11). The Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5-7).

## CONCLUSIONS OF LAW

The Social Security Act ("Act") authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential

---

communicative or environmental limitations; she can understand and remember a range of instructions and procedures; she can sustain attention, concentration and pace for simple tasks; she can interact with peers and supervisors in a task-focused setting; and she can adapt adequately to work demands and situational changes (Tr. 17-18).

3

evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. Sections 404.1520, 416.920. In summary, the evaluation proceeds as follows:

> 1) Is the claimant engaged in substantial gainful activity?
>
> 2) Does the claimant have an impairment or combination of impairments that significantly limits his or her ability to do basic work activities?
>
> 3) Does the claimant have an impairment that satisfies the duration requirement and meets or medically equals the criteria of a listed impairment within Appendix 1?
>
> 4) Does the claimant have the residual functional capacity to return to his or her past relevant work?
>
> 5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied plaintiff's claim at the fifth step.

As previously mentioned, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5-7). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); See 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Serv's., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Serv's., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d

4

at 695 (quoting <u>Casey v. Secretary of Health and Human Serv's.</u>, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." <u>Cohen v. Secretary of Health and Human Serv's.</u>, 964 F.2d 524, 528 (6th Cir. 1992) (quoting <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984)).

The undersigned will first address plaintiff's arguments regarding errors the ALJ made at the fourth step in the sequential evaluation process. In conjunction with the fourth step, the Administrative Law Judge makes findings regarding the weight assigned to medical source statements in the record[2], the claimant's credibility[3], the claimant's residual functional capacity[4], the physical and mental demands of the claimant's past relevant work, and the claimant's ability to return to the past relevant work. 20 C.F.R. § 404.1520(e).

Plaintiff takes issue with the weight accorded to the September 25, 2006 functional opinions of Dr. Wahl, a treating general practitioner; the May 24, 2005 functional opinions of Dr. Changaris, an examining neurosurgeon; and the January 10, 2006 functional opinions of Dr. Guerrero, a non-examining State agency medical consultant (DN 11). Plaintiff contends the ALJ's findings, regarding the weight assigned to each of these medical opinions, are not supported by

---

[2] 20 C.F.R. § 404.1527(d).

[3] In assessing a claimant's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. § 404.1529; Social Security Ruling 96-7p.

[4] The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his or her physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546.

5

substantial evidence in the record and do not comport with applicable law (DN 11). Defendant argues the ALJ's findings are supported by substantial evidence in the record (DN 12).

While the regulations require an Administrative Law Judge to evaluate every medical opinion in the record, the process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. § 404.1527(d). Controlling weight is assigned to the medical opinion of a treating source only when it is both well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. Social Security Ruling 96-2p; 20 C.F.R. § 404.1527(d)(2); Bogle v. Sullivan, 998 F.2d 342, 347-348 (6th Cir. 1993); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 857 (6th Cir. 1990). Notably, if the medical opinion of a treating source is found not to be entitled to controlling weight then the Administrative Law Judge must determine how much weight it should be accorded and set forth good reasons for doing so. Social Security Ruling 96-2p; 20 C.F.R. § 404.1527(d)(2); Wilson v. Commissioner of Social Security, 378 F.3d 541, 545-546 (6th Cir. 2004). Additionally, if the treating source's opinion is not given controlling weight, the Administrative Law Judge must determine how much weight should be accorded to the opinions of examining and non-examining sources as well as explain in the decision the weight given to those opinions. 20 C.F.R. § 404.1527(f)(2)(ii); see also Social Security Ruling 96-6p.

The relationship that exists between the medical source and the claimant is a factor the Administrative Law Judge must consider in assessing the weight given to a medical opinion. 20 C.F.R. § 404.1527(d) and (f); Social Security Ruling 96-6p. More specifically, as the ties between the medical source and the claimant become weaker the regulations provide progressively

more rigorous tests for weighing the opinions. Social Security Ruling 96-6p, 1996 WL 374180, *2 (July 2, 1996). For example, the opinions of physicians who do not have a treatment relationship with the claimant are "weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." Id. For this reason, opinions of non-examining State agency physicians can be given weight only insofar as they are supported by all of the evidence in the case record, including other medical opinions. 20 C.F.R. § 404.1527(f); Social Security Ruling 96-6p, 1996 WL 374180, *2 (July 2, 1996); Atterbery v. Secretary of Health and Human Services, 871 F.2d 567, 570 (6th Cir. 1989) (opinions of a non-examining State agency medical adviser that are consistent with the evidence of record constitute substantial evidence).

Here, in the context of assigning weight to these functional opinions, the ALJ provided a comprehensive summary of the August 20, 2004 report that Dr. Changaris prepared following an independent medical evaluation (compare Tr. 20-21 with Tr. 248-253). Further, the ALJ characterized this report as a medical opinion indicating plaintiff is capable of performing light or sedentary work activities (Tr. 21). For reasons that are not clear, the ALJ did not provide a comprehensive summary of Dr. Changaris' May 24, 2005 report. Moreover, the administrative decision does not even mention the fact that Dr. Changaris prepared another report following a second independent medical evaluation.[5] This was an important omission because the May 24, 2005 report sets forth more restrictive functional limitations than the August 20, 2004 report (compare

---

[5]In the context of discussing Dr. Guerrero's opinions, the ALJ vaguely referred to an opinion from Dr. Changaris that plaintiff is limited to lifting no more than 10 pounds and cannot perform postural activities and fine motor movements (Tr. 24).

7

Tr. 248-253[6] with Tr. 254-260[7]).

The error, however, appears to be harmless because the ALJ set forth good reasons for affording partial weight to the May 24, 2005 functional limitations (Tr. 24). Specifically, the ALJ relied on the opinions of Dr. Guerrero and other medical evidence in the record, including the functional limitations expressed by the treating orthopedic surgeon[8], as the basis for his decision (Tr. 19, 24). Notably, Dr. Guerrero is an expert in the evaluation of functional limitations for disability claims under the act. Social Security Ruling 96-6p. Further, Dr. Guerrero had the benefit of reviewing the medical evidence in the administrative record as well as the August 2004 and May 2005 reports prepared by Dr. Changaris which set forth the results of each physical evaluation (Tr. 323-330). Notably, Dr. Guerrero accorded partial credibility to plaintiff's stated symptoms and restrictions because he concluded they were not supported by the objective medical evidence (Tr. 328). Dr. Guerrero acknowledged that his findings regarding plaintiff's function limitations were

---

[6]Dr. Changaris opined that plaintiff has a total whole person impairment of 17% and that her permanent restrictions should include: minimal lifting (less than 20 pounds); no overhead work, crawling, twisting, squatting, bending, stooping, climbing or repetitive movements of the arms or neck; and she may require breaks every hour or two to stretch or change positions (Tr. 251-252).

[7]Dr. Changaris opined that plaintiff has a total whole person impairment of 32% and that her permanent restrictions should include: minimal lifting (less than 10 pounds); no crawling, twisting, squatting, bending, stooping, climbing, repetitive fine motor movements, or overhead work; and she may require breaks every hour or two to stretch or change positions (Tr. 259).

[8]From October 28, 2003 through February 17, 2004, Dr. McFadden, an orthopaedic surgeon, provided plaintiff with conservative treatment for myofascial cervicothoracic pain and cervical degenerative disc disease (Tr. 161-165). On February 17, 2004, Dr. McFadden opined that plaintiff had reached maximum medical improvement and can work without restrictions at her past job which involves lifting 1-20 pounds frequently and up to 59 pounds rarely, as well as limited pushing and pulling (Tr. 161). On the same date, in a different document, Dr. McFadden restricted plaintiff's repetitive lifting, climbing, pushing/pulling, and overhead work to not over 11-15 times per hour; and restricted her to no lifting over 10 pounds as to each arm (Tr. 162).

8

significantly different from those that Dr. Changaris expressed in May 2005 (Tr. 329).[9]  Dr. Guerrero explained that Dr. Changaris' opinion was given some weight and was incorporated into his residual functional capacity assessment (Tr. 329).  In sum, the undersigned concludes the ALJ's findings, regarding the weight accorded to the May 2005 limitations expressed by Dr. Changaris, are supported by substantial evidence in the record and fully comport with applicable law.

Next, the ALJ set forth a number of reasons for discounting the functional limitations that Dr. Wahl expressed in an assessment dated September 25, 2006[10] (Tr. 23-24).  Specifically, he concluded these more restrictive functional limitations were inconsistent with the doctor's previous opinions and his treatment records, were based upon plaintiff's subjective statements, and were not the product of objective medical evidence (Tr. 23-24).[11]  These are good reasons for discounting the

---

[9] On January 10, 2006, Dr. Guerrero opined that plaintiff's exertional limitations are: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; an unlimited ability to push and/or pull (including operation or hand and/or foot controls) (Tr. 324).  He opined her postural limitations are: able to frequently climb ramp/stairs and balance; and occasionally climb ladder/rope/scaffolds, stoop, kneel, crouch, and crawl (Tr. 325).  As to manipulative limitations, Dr. Guerrero opined plaintiff is limited in reaching all directions and overhead reaching is limited to occasionally (Tr. 326).

[10] On the assessment form, Dr. Wahl opined that plaintiff can walk four blocks without rest or severe pain; can sit continuously for 1 hour but must stand and stretch thereafter; can stand continuously for 30 minutes but must lie down thereafter; can sit about 2 hours in an 8 hour workday (with normal breaks); can stand/walk less than 2 hours in an 8 hour workday; can occasionally twist at the waist but rarely stoop (bend); would likely need to take 3 unscheduled breaks of 1 hour duration during an average 8 hour workday; and would likely to be absent from work more than four days a month (Tr. 514-516).  Notably, Dr. Wahl indicated a 10 pound lifting and carrying restriction (Tr. 515).

[11] The ALJ discounted the September 25, 2006 assessment from Dr. Wahl for the following reasons:

> "As a treating source, Dr. Wahl's assessment is given careful
> consideration.  However, Dr. Wahl had previously opined the

9

the September 25, 2006 functional opinions of Dr. Wahl and the reasons are supported by substantial evidence in the record.  Social Security Ruling 96-2-p; 20 C.F.R. § 404.1527(d)(2); Wilson v. Commissioner of Social Security, 378 F.3d 541, 545-546 (6th Cir. 2004); Bogle v. Sullivan, 998 F.2d 342, 347-348 (6th Cir. 1993); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 857 (6th Cir. 1990); Villarreal v. Secretary of Health and Human Services, 818 F.2d 461, 463 (6th Cir. 1987) (per curiam).

---

> claimant is capable of perform [sic] light and sedentary work, with some restrictions.  Clearly, the assessment he provided on September 25, 2006, is based on what the claimant subjectively told him on that date, versus an objective medical opinion.  There had been no change in the claimant's condition since he opined she can perform sedentary and light work activity.  She visited with him on that date for the purpose of completing the disability forms.  For the first time, he records her statement she must lie down several times per day for rest, so in turn, he states this on the assessment form.
>
> It is also noted in Dr. Wahl's notes that on numerous occasions, the claimant has 'asked for work excuse' and he accommodated her request, including off work two weeks for bronchitis; off two to four weeks due to stress; off three weeks due to fatigue and shortness of breath, off two days because she was coughing, etc.  On one occasion, Dr. Wahl suggested she be off work for two or three days and return to work on Wednesday or Thursday.  The claimant called Dr. Wahl the following day and advised him she was going to take off all week and would return to work on Saturday (Exhibit 19F).  Clearly, Dr. Wahl has demonstrated a pattern of accommodating the claimant's work requests, based on her subjective complaints.  Because Dr. Wahl's latter assessment is based on what the claimant subjectively told him, versus this earlier opinion, which is consistent with the opinions of her treating and examining medical specialists (i.e., orthopedists and neurologists), it is not afforded any weight whatsoever and is not persuasive."

(Tr. 23-24).

Contrary to plaintiff's assertion, in an April 11, 2005 treatment note Dr. Wahl did indicate his agreement with the less restrictive lifting and moving restrictions that Dr. Changaris expressed on August 20, 2004 (Tr. 251-252, 382). Further, in an attending physician's statement dated June 16, 2004, Dr. Wahl indicated that plaintiff should not engage in repetitive use of her upper extremities; cannot do repetitious lifting with her arms and pulling with her arms; and cannot do repetitive bending at the waist and upper back (Tr. 401). Thus, substantial evidence in the record supports the ALJ's finding that Dr. Wahl expressed less restrictive functional opinions prior to September 25, 2006.

Nor is there merit to plaintiff's allegation that the ALJ substituted his opinion for the raw medical data or the opinions of Dr. Wahl. Certainly, Dr. Guerrero did not have an opportunity to review Dr. Wahl's treatment records. However, Dr. Wahl's treatment records do not set forth any additional objective test results that substantiate more restrictive limitations (Tr. 374-510, 544-548). Moreover, with the exception of a cursory examination and consideration of plaintiff's subjective statements during the September 25, 2006 office visit, Dr. Wahl's functional opinions appear to be based upon findings set forth in the August 2004 and May 2005 reports of Dr. Changaris (See Tr. 246-260, 513-516, 546). As previously mentioned, Dr. Guerrero considered the findings in these reports when he rendered his opinion on January 10, 2006 (Tr. 323-330). In sum, the undersigned concludes there is no merit to plaintiff's arguments regarding the weight accorded to the September 25, 2006 functional opinions of Dr. Wahl; the May 24, 2005 functional opinions of Dr. Changaris; and the January 10, 2006 functional opinions of Dr. Guerrero.

Next, plaintiff challenges the physical limitations set forth in the ALJ's residual functional capacity findings (DN 11). Essentially, she argues in light of the assessments prepared

11

by Drs. Changaris and Wahl, the functional opinions of Dr. Guerrero do not provide substantial evidence to support the ALJ's findings regarding her physical limitations (DN 11). For the reasons set forth above, the undersigned concludes there is no merit to plaintiff's argument. Further, the undersigned has carefully reviewed the record and concludes the ALJ's residual functional capacity findings are supported by substantial evidence and fully comport with applicable law.

Next, plaintiff challenges the ALJ's findings at the fifth step in the sequential evaluation process (DN 11). At the fifth step, it is the Commissioner's burden to show that there exists a significant number of jobs in the national economy that the claimant can perform, given his or her residual functional capacity. See Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing, Bradford v. Secretary, Dep't. of Health and Human Serv's., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), provided the vocational expert's testimony is based on a hypothetical question that accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Serv's., 820 F.2d 777, 779 (6th Cir. 1987).

Here, plaintiff points out that when the hypothetical question to the vocational expert included Dr. Wahl's most restrictive limitations he opined there were no jobs she could perform (DN 11 at Pages 14-15; Tr. 596). Essentially, plaintiff argues since this hypothetical question accurately portrays her physical limitations the vocational experts testimony in response should have been relied upon to make findings at the fifth step (DN 11). For the reasons set forth above, substantial evidence in the record supports the ALJ's decision to discount the limitations expressed by Dr. Wahl. Further, the ALJ did pose a hypothetical question to the vocational expert that included the limitations expressed by Dr. Guerrero (Tr. 594). Thus, substantial evidence supports the factual

12

underpinnings of the hypothetical question posed to the vocational expert. Consequently, because the vocational expert was able to identify a significant number of jobs which plaintiff could perform, the Commissioner met his burden. See Blacha v. Secretary of Health and Human Serv's., 823 F.2d 922, 928 (6th Cir. 1987).

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and it is recommended that judgment be granted for the Commissioner.

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within ten (10) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be filed

within ten (10) days or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

Copies:	Counsel